UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>MARK LLOYD RUDY,<br><br>Defendant. | Case No. 20-cr-00111-JD-1<br><br>**ORDER RE EARLY TERMINATION OF SUPERVISION** |

This case was remanded to the Court for the limited purpose of granting early termination of supervised release for defendant Mark Lloyd Rudy, or saying why early termination is not warranted. Dkt. No. 12. Rudy was convicted in the Eastern District of California of receiving and distributing material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2). Dkt. No. 4.[1] In 2006, Rudy was sentenced to 46 months in custody, followed by 120 months of supervised release. *Id*. at 1. As is common in convictions for child pornography, the conditions of supervised release included restrictions on internet and computer access, no contact with minors, registration as a sex offender, and participation in monitoring and treatment programs directed to sex offenses, among other provisions. *Id*. Rudy violated his conditions of release on several occasions. *Id.* at 2. He was sentenced to additional jail time and a new term of supervised release for the violations. *Id*. at 1.

Rudy was released from custody in 2018. *Id*. He moved into a residential reentry center for a few months, and then into his own residence. *Id*. He has held a job with the Department of Homelessness & Supportive Housing for the City and County of San Francisco since 2018. *Id*.; Dkt. No. 8 at 2.

---

[1] Rudy was transferred on supervised release to this District in 2020. Dkt. No. 1.

1    In September 2024, the United States Probation Office (USPO) advised the Court that
2    Rudy had completed several years of individual and group treatment for sex offenders, and had not
3    violated his conditions of release since 2018.  *Id*. at 2-3.  USPO determined that Rudy's risk of
4    recidivism was low, and proposed an early termination of supervised release.  Dkt. No. 3.  In
5    October 2024, the Court granted a reduction of the term of supervised release by 15 months.
6    Dkt. No. 4.  The government states, without objection by Rudy, that his term of supervised release
7    will end on December 19, 2025.  Dkt. No. 13 at 2.

8    In July 2025, Rudy filed a new request for early termination.  Dkt. No. 6.  The request
9    detailed Rudy's progress with respect to sex offender treatment, and in other areas of his life.
10   USPO stated that it was "not opposed" to Rudy's request.  Dkt. No. 8 at 3.  The United States did
11   not file a response to the request.

12   The Court denied a further reduction or termination of Rudy's term of supervised release.
13   Dkt. No. 9.  Rudy appealed, and a circuit panel remanded the case for a fuller discussion of the
14   reasons for denial in light of *United States v. Emmett*, 749 F.3d 817, 821-22 (9th Cir. 2014), or a
15   grant of early termination.  Dkt. No. 12.  The government filed a "statement" opposing early
16   termination on the grounds that Rudy agreed in a plea agreement not to appeal his sentence, and
17   that a record of good compliance is not in itself a reason for early termination.  Dkt. No. 13.  Rudy
18   filed a responsive statement that disagreed with the government's plea agreement position and
19   urged termination on the same grounds he previously presented.  Dkt. No. 14.

20   The Court need not get into the plea agreement question because early termination is not
21   warranted on the record.  Under 18 U.S.C. § 3583(e)(1), the Court may terminate a term of
22   supervised release after one year if "warranted by the conduct of the defendant released and the
23   interest of justice."  The Court "enjoys discretion to consider a wide range of circumstances when
24   determining whether to grant early termination."  *Emmett*, 749 F.3d at 819.  Its discretion is
25   guided by consideration of several of the factors stated in 18 U.S.C. § 3553(a).  *See* 18 U.S.C.
26   § 3583(e).  These factors "include the nature and circumstances of the offense, the need for
27   deterrence, the need to protect the public, the need to provide defendant with training or medical
28   care, and the relevant provisions of the Sentencing Guidelines."  *United States v. Cate*, 971 F.3d

1054, 1058 (9th Cir. 2020) (citation omitted). "[E]xceptional or extraordinary circumstances" are not prerequisites to relief, *United States v. Ponce*, 22 F.4th 1045, 1046-47 (9th Cir. 2022), nor is a showing of undue hardship, *Emmett*, 749 F.3d at 819.

The defendant bears the burden of demonstrating that early termination is warranted. *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006). In deciding an early termination request, the Court should explain its reasons, but it "need not tick off each of the [relevant] § 3553(a) factors to show that it has considered them." *Emmett*, 749 F.3d at 821-22 (brackets in original).

There is no question that Rudy has fully complied with the conditions of his release after the violations that happened in prior years. There is also no question that he has done much to turn his life in a positive direction, including pursuit of therapy and care to help manage issues related to his underlying offense. These efforts are to be applauded and recognized for the commitment to rehabilitation they manifest. It was for this reason that the Court previously reduced Rudy's release term by 15 months.

Even so, early termination of the reduced term is not in the interests of justice or compelled by the factors of 18 U.S.C. § 3553(a) as incorporated in 18 U.S.C. § 3583(e). Rudy was sentenced to a 10-year term of supervised release because he committed a serious offense involving the sexual exploitation of children.[2] Although a sentence of 10-year term of supervised release is substantial, it was well within the range permitted by the statute and Sentencing Guidelines, and was arguably on the lighter end of sentencing. *See* 18 U.S.C. § 3583(k) (supervised release term for conviction under 18 U.S.C. § 2252(a)(2) "is any term not less than 5 years, or life"); U.S.S.G. § 5D1.2(b)(2) (under guideline policy statement, if the convicted offense is a sex offense, "the statutory maximum term of supervised release is recommended."). The Court further reduced Rudy's term to less than nine years.

---

[2] To be clear, the Court does not rely on the seriousness of the offense as a basis of denying early termination. It is pointed out solely to explain why Rudy initially received a 10-year term of supervised release.

3

The record establishes that Rudy had difficulty complying with the conditions of release for several years. *See* Dkt. No. 4 at 1-2. The difficulties were sufficient for the sentencing court to revoke his release, and impose another sentence of custody followed by another term of supervised release. *Id*. He has been on an even keel since the last period of custody, but his performance while on supervised release has not been an uninterrupted course of smooth sailing.

The record also indicates that Rudy has benefitted substantially from treatment and monitoring conditions. The key substantive conditions of Rudy's release were aimed at providing supervision and therapeutic care to promote his rehabilitation and protect the public by reducing the possibility that he would reoffend. *See* Dkt. No. 4 at 2-3. These conditions included individual and group therapy sessions, the development of a relapse prevention plan that the USPO monitors, polygraph testing, and other measures. *Id*. USPO has also conducted regular assessments to evaluate Rudy's risk of sexual recidivism and reoffending. *Id*. at 3. Much of Rudy's recent success in rehabilitation appears to be driven by these conditions.

In light of the record as a whole, there is no good reason to turn off this support structure just a little over two months before it will end on its own accord on December 19, 2025. The conditions have benefitted Rudy enormously, and they provide substantial protection to the public from further criminal conduct by him. Rudy did not present evidence of any countervailing concerns. Rudy says he faces uncertainty when making travel plans because he is required to ask permission of USPO to leave the District, but there is no evidence that he has been denied travel. *See* Dkt. No. 6 at 7-8. The same goes for his mention of possibly seeking a job change. There is no evidence he has lost a job opportunity, or has given up looking for one, as a result of his release conditions. *Id*.

Consequently, the application of Section 3583(e) points firmly toward completion of Rudy's supervised release term as scheduled on December 19, 2025. Early termination is denied.

**IT IS SO ORDERED.**

Dated: October 1, 2025

_____
JAMES DONATO
United States District Judge

4